**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

|  |  |  |
|---|---|---|
| | ) | |
| DANIEL BUCHANAN, as Personal | ) | |
| Representative of the Estate of | ) | |
| Michael Buchanan, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 04-26-B-W |
| | ) | |
| STATE OF MAINE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR RECONSIDERATION**
**AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Relying on Eleventh Amendment immunity, the state of Maine asks this Court to reconsider its earlier decision that the Plaintiff had stated a viable reasonable accommodation claim under Title II of the Americans with Disabilities Act.  Although this Court agrees that *Tennessee v. Lane,* 541 U.S. 509 (2004) does not extend to the non-fundamental, though important, rights protected by Title II, this Court denies the State's Motion for Reconsideration.  By entering into a consent decree, the State may have consented to waive its Eleventh Amendment immunity.

**I.   BACKGROUND**

On March 3, 2005, this Court issued an Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge (Docket No. 65).  The Order, *inter alia*, concluded Count VII of Plaintiff Daniel Buchanan's[1] Complaint stated a viable reasonable accommodation claim under Title II of the Americans with Disabilities Act against the State and

---

[1] The Plaintiff Daniel Buchanan is the brother and personal representative of the Estate of Michael Buchanan.  To avoid confusion, when referring to the Plaintiff, this Court will refer to Daniel Buchanan in his representative capacity and when referring to Mr. Buchanan, this Court will refer to Michael Buchanan, the decedent.

Lincoln County, and rejected the Magistrate Judge's recommendation that the ADA count be dismissed.[2]  The State filed a Motion for Reconsideration, arguing it is entitled to sovereign immunity from Title II claims.[3]  Buchanan has since filed a Motion for Leave to File Third Amended Complaint with the ADA claim restated against each Defendant.

Earlier Orders fully set out the facts.  *See* Recommended Decisions of the Magistrate Judge (Docket Nos. 43, 44); Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge (Docket No. 65).  Briefly, this lawsuit tests the legal implications of the death of Michael Buchanan, a person with a disability, who was shot and killed by Deputy Sheriff Kenneth Hatch.

## II.   DISCUSSION

### A.   Federal Abrogation of State Immunity:  General Principles

The State contends that even if the Plaintiff's Amended Complaint stated a viable Title II claim, it is entitled to qualified immunity under *Elder v. Holloway,* 510 U.S. 510 (1994). Generally, the Eleventh Amendment bars individuals from suing states for monetary relief based on violations of federal law.  *See U.S. Const. amend.* XI; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  There is one relevant exception:  congressional abrogation of state immunity.[4]  *Seminole Tribe*, 517 U.S. at 55-56.  This exception is created by section 5 of the Fourteenth Amendment, which provides that "Congress shall have power to enforce, by

---

[2] In its original iteration and in the First Amended Complaint, Buchanan's ADA claim was styled as Count VII. (Docket Nos. 1, 32).  After the decision by the Magistrate Judge on the Motion to Dismiss, Buchanan filed a Second Amended Complaint that did not include an ADA claim.  (Docket No. 46).  After the Court's Order rejecting the Magistrate's recommendation to dismiss the ADA claim, it subsequently granted a Motion to Strike the Second Amended Complaint and ordered Buchanan to file a Third Amended Complaint consistent with the Court's previous orders.  (Docket No. 64).  The ADA claim has now reemerged in Buchanan's Proposed Third Amended Complaint as Count VII.  (Docket No. 69).

[3] The County neither objected to the Recommended Decision nor joined in the Motion for Reconsideration.

[4] There is another exception:  where the state has consented to be sued.  *Seminole,* 517 U.S. at 54.  Here, although the State entered into a consent decree with members of a class of disabled citizens, the record is silent as to whether the state of Maine consented to suit.  The Court will discuss the impact of the consent decree in Part B.

appropriate legislation, (its) provisions." *U.S. Const. amend.* XIV, § 5.  Even though Congress has the right to abrogate state immunity under section 5, it may not do so consistent with the restrictions of the Eleventh Amendment unless its action is consistent with the overriding purposes of the Fourteenth Amendment.  "When Congress seeks to remedy or prevent unconstitutional discrimination, § 5 [of the Fourteenth Amendment] authorizes it to enact prophylactic legislation proscribing practices that are discriminatory in effect, if not in intent, to carry out the basic objectives" of the substantive provisions of the Fourteenth Amendment, namely the Equal Protection and Due Process clauses.  *Lane*, 541 U.S. at 520, 523.

Whether Congress' abrogation of state immunity is proper depends on whether Congress: (1) unequivocally expressed its intent to abrogate the immunity; and, (2) acted "pursuant to a valid exercise of power."  *Lane*, 541 U.S. at 517 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). The answer to the first question is clear; the answer to the second, as Magistrate Judge Kravchuk said, is "thorny".  *Rec. Dec. for State Def.'s* at 5 (Docket No. 43). This Court steps gingerly into the thicket.

### 1.   The Unequivocal Expression of Congressional Intent

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  The Act defines "public entity" to include state and local governments, as well as their agencies and instrumentalities.  § 12131(1).  Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, mee[t] the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided by a public entity."  § 12131(2).  Title II's

enforcement provision incorporates by reference § 505 of the Rehabilitation Act of 1973, 29

U.S.C. § 794a, which authorizes private citizens to bring suits for money damages.  42 U.S.C. §

12133.  It provides also that "[a] State shall not be immune under the eleventh amendment to the

Constitution of the United States from an action in Federal or State court of competent

jurisdiction for a violation of this chapter."  § 12202.   A more unequivocal expression of the

congressional intent to abrogate state immunity is difficult to imagine.

### 2.   The Valid Exercise of Congressional Power

To determine whether a § 5 abrogation is a "valid exercise of power," the Supreme Court

provided a road map in *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) and its progeny.   The

Court held that § 5 legislation is valid if it exhibits "a congruence and proportionality between

the injury to be prevented or remedied and the means adopted to that end."  *Lane,* 541 U.S. at

520 (quoting *Boerne,* 521 U.S. at 520).   Whether Congress's enactment of Title II of the ADA

satisfies the *Boerne* "congruence and proportionality" requirement in the context of public

accommodations requires a three step analysis.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531

U.S. 356, 365 (2001).  The first step is "to identify the scope of the constitutional rights at issue."

*Id.* at 365.  Second, the court must examine whether Congress "identified a history and pattern of

unconstitutional . . . discrimination by the States against the disabled."  *Id.* at 368.  Third, the

court must assess whether the remedy is an "appropriate response to [a] history and pattern of

unequal treatment."  *Lane,* 541 U.S. at 530; *see Fla. Prepaid Secondary Educ. Expense Bd. v.*

*College Savings Bank*, 527 U.S. 627, 646 (1999).

### i.   The Constitutional Right or Rights Congress Sought to Enforce

As Magistrate Judge Kravchuk pointed out in her Recommended Decision, "the nature and constitutional stature of Michael's right is not . . . easy to peg."[5] *Rec. Dec. for State Def.'s* at 5 n.4 (Docket No. 43).   *Lane* is of assistance.  *Lane* concluded that Title II of the ADA seeks to enforce "a number of constitutional rights and that a history of unconstitutional disability discrimination supported Congress's enactment of prophylactic legislation." *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 5-6 (1st Cir. 2004); *Lane,* 541 U.S. at 522-29 (applying the first two steps in the *Boerne* analysis).  Lane's overriding concern was the "unequal treatment" disabled individuals have historically experienced.  *Lane,* 541 U.S. at 524 ("pervasive unequal treatment in the administration of state services and programs"), at 525 ("a pattern of unequal treatment"), at 526 ("hundreds of examples of unequal treatment of persons with disabilities by States and their political subdivisions."), at 530 ("this history and pattern of unequal treatment.").  *Lane* states that *Garrett* identified Title I's purpose as the enforcement of the Fourteenth Amendment's command that "all persons similarly situated should be treated alike," an analysis that evokes the Equal Protection Clause. [6] *Id.* at 522-23 (quoting *Garrett,* 531 U.S. at 365-66) ("Title II, like Title I, seeks to enforce this prohibition on irrational disability discrimination."); *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985).

### ii.   History of Unconstitutional Discrimination

Analyzing the second prong of the *Boerne* congruence and proportionality test, *Lane* discussed two aspects:  (1) the "sheer volume" of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities; and, (2) the  backdrop of

---

[5] Magistrate Judge Kravchuk noted the parties had not "adequately briefed the question of whether there is a constitutional or fundamental right implicated by this complaint as it relates to these defendants." *Rec. Dec.* at 5 n.4. The same could be said even now.

[6] The *Lane* analysis of affected constitutional rights cannot be imported uncritically into this Court's analysis, because *Lane* addressed Title II in the context of a disabled person's right of access to the courts, the right to trial by jury, and the Sixth Amendment Confrontation Clause, constitutional rights not identical to those implicated here.

"pervasive unequal treatment in the provision of state services and programs…." *Lane*, 541 U.S. at 525, 528 (emphasis added)("a pattern of unequal treatment in the administration of a wide range of *public services, programs and activities*.").   Under this prong, the Supreme Court considered the record supporting Title II as a whole, and held that Congress had documented a sufficient historical predicate of unconstitutional disability discrimination in the provision of public services to justify enactment of a prophylactic remedy pursuant to Congress's authority under § 5 of the Fourteenth Amendment.  *Id.* at 529.  *Lane* ruled that the second *Boerne* inquiry was satisfied generally as applied to the ADA, and is  satisfied here. *Id.*; *see also Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ*., 405 F.3d 954, 958 (11th Cir. 2005); *Cochran v. Pinchak*, 401 F.3d 184, 191 (3d Cir. 2005), *vacated and rehearing granted on other grounds*, 2005 U.S. App. LEXIS 11564 (3d Cir., 2005) ("We are bound to [the Supreme Court's] conclusion as to step two"); *Miller v. King*, 384 F.3d 1248, 1271 n.25 (11th Cir. 2004) ("the Supreme Court in *Lane* in effect has decided the step-two inquiry as to Title II, and we must follow the Supreme Court's lead.").

### iii.  Title II as an Appropriate Response to a History and Pattern of Unequal Treatment

The question remains  whether Title II is an  appropriate response to this history and pattern of unequal treatment.  At the outset, the Court must determine the scope of that inquiry, since "Title II reaches a wide array of official conduct in an effort to enforce an equally wide array of constitutional guarantees." *Lane*, 541 U.S. at 530-531.  *Lane* instructs not to undertake the *Boerne* congruence/proportionality analysis as to Title II in its entirety, but instead determine whether Congress had the power under § 5 to enforce the constitutional right at issue, namely equal protection for disabled citizens to reasonable accommodations.  *Id.* at 531, *see also Id.* at 531 n.18 ("The answer to the question *Boerne* asks--whether a piece of legislation attempts

6

substantively to redefine a constitutional guarantee--logically focuses on the manner in which the legislation operates to enforce that particular guarantee.   It is unclear what, if anything, examining Title II's application to hockey rinks or voting booths can tell us about whether Title II substantively redefines the right of access to the courts.).

In *Lane*, George Lane and Beverly Jones, two paraplegics who use wheelchairs for mobility, filed suit against the State of Tennessee and several counties claiming that they were denied access to courtrooms that lacked elevators.   *Lane*, 541 U.S. at 513.   The State of Tennessee moved to dismiss the suit under the Eleventh Amendment.  *Id.* at 514.   The district court denied the motion to dismiss, and the Sixth Circuit affirmed. *Id.*   The Supreme Court granted certiorari and affirmed the Sixth Circuit's decision, finding that the ADA, "as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id.* at 533-34.   The Court held that Title II's "requirement of program accessibility . . . is congruent and proportional to its object of enforcing the right of access to the courts" as it requires only "'reasonable modifications' that would not fundamentally alter the nature of the service provided" and does not require states to "undertake measures that would impose an undue financial or administrative burden." *Id*.

The Supreme Court did not, however, decide whether the statutory abrogation of sovereign immunity was constitutional with regard to non-fundamental rights.  After finding that the abrogation was valid as applied to the fundamental rights associated with access to the courts, the Supreme Court stated that it "need go no further." *Id.* at 533.  Lane's holding is narrow and is limited "to the class of cases implicating the fundamental right of access to the courts."   *Id.* at 544; *see also Spencer v. Easter*, 109 Fed. Appx. 571, 572-573 (4th Cir. 2004).  *Lane* declined to

7

answer the *Boerne* proportionality/congruence inquiry on whether "Title II's duty to accommodate exceeds what the Constitution requires in the class of cases that implicate on *Cleburne's* prohibition on irrational discrimination." *Lane,* 541 U.S. at 533 n.20 (quoting *Garrett,* 531 U.S. at 372); *see also Badillo-Santiago,* 378 F.3d at 6. *Lane* limited its holding to its facts.[7]

The First Circuit has yet to opine on the topic post-*Lane*, beyond the issue of access to courts. *See Badillo-Santiago*, 378 F.3d at 6.[8] Although *Lane* has not been fully examined, several circuits have interpreted *Lane* restrictively. *See Cochran*, 401 F.3d 184 (3d Cir. 2005) *vacated and rehearing granted on other grounds*, 2005 U.S. App. LEXIS 11564 (3d Cir., 2005) (refusing to extend Lane to Title II claims by disabled prison inmates); *Bill M. v. Neb. Dep't of Health & Human Servs. Fin. & Support*, 408 F.3d 1096, 1100 (8th Cir. 2005) (refusing to extend *Lane to a* suit by plaintiffs alleging the denial of home and community-based Medicaid-funded services in violation of Title II since, other than access to courts, "the extension of Title II of the ADA to the states is not a proper exercise of Congress' power."); *Badillo-Santiago*, 378 F.3d at 6 (1st Cir. 2004) (upholding one of plaintiff's federal claims implicating his right of access to the

---

[7]In dissent, Chief Justice Rehnquist criticized the adoption of an "as applied" approach, leaving the courts to "sort out which hypothetical applications of an undifferentiated statute, such as Title II, may be enforced against the States. All the while, States will be subjected to substantial litigation in a piecemeal attempt to vindicate their Eleventh Amendment rights." *Lane,* 541 U.S. at 552.

[8] The closest First Circuit case is *Kiman v. New Hampshire Dep't of Corrections*, a Title II case where an inmate at a state prison alleged officials discriminated against him when they failed to adequately respond to his medical needs as an inmate suffering from amyotrophic lateral sclerosis. Civ. No. 134-B, 2001 WL 1636431, *1 (D.N.H. Dec. 19, 2001.) However, that case has a long appellate history and is still not resolved. *See Kiman*, 2001 WL 1636431 at *1 (District Court dismissed the claim, being "satisfied that the Eleventh Amendment deprives the court of jurisdiction to consider plaintiff's Title II claim."); *Kiman v. New Hampshire Dep't Corrections*, 301 F.3d 13 (1st Cir. 2002) (over a dissent, reversed and remanded to the district court, and concluded Kiman had sufficiently alleged a violation of the Eighth Amendment and that this constitutional violation by the state was a sufficient basis for concluding that Congress acted within its power in abrogating the State's sovereign immunity); *Kiman v. New Hampshire Dep't Corrections*, 332 F.3d 29 (1st Cir. 2002) (divided *en banc* panel reversed the three judge panel and affirmed the judgment of the district court (favoring sovereign immunity); *Kiman v. New Hampshire Dep't of Corrections*, 124 S. Ct. 2387 (2004) (On the petition for writ of certiorari, United States Supreme Court vacated judgment of the *en banc* panel and the case was remanded to the First Circuit for further consideration in light of *Lane*).

courts); *Miller*, 384 F.3d at 1275-76 (refusing to extend *Lane* to Title II claims by disabled prison inmates) (*but see Ass'n for Disabled Ams., Inc.,* 405 F.3d at 958-959 (holding Title II of the ADA, as applied to access to public education, constitutes a valid exercise of Congress' enforcement power under Section 5 of the Fourteenth Amendment)).  *See also Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 303 (5th Cir. 2005) (en banc) (Jones, J., concurring in part and dissenting in part) (concluding, as to issue not reached by majority, that Fifth Circuit's prior precedent "remains valid in holding that ADA Title II, apart from the *Lane* scenario, does not validly abrogate States' Eleventh Amendment immunity");  *Phiffer v. Columbia River Corr. Inst*., 384 F.3d 791, 793 (9th Cir. 2004) (O'Scannlain, J., concurring) ("It is therefore open to question whether Title II validly abrogates state sovereign immunity where no such fundamental right is at issue.  A State may well retain its Eleventh Amendment immunity where a plaintiff premises a Title II claim solely upon an alleged equal protection violation and has not suffered the deprivation of any other constitutional right.") (citations omitted).

In *Pace,* the Fifth Circuit declined to decide the *Lane* issue, finding the State of Louisiana waived its sovereign immunity in a case alleging disability discrimination in public schools, *Pace*, 403 F.3d at 287.  However, it noted that the Supreme Court has never before recognized access to public education (citing *Plyler v. Doe*, 457 U.S. 202, 221, 223, (1982) (although important, education is not a fundamental constitutional right)) or freedom from disability discrimination in education (though *citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985), for the proposition that disability classifications are subject only to rational-basis scrutiny) to be fundamental rights.  *Pace*, 403 F.3d at 287.

9

The Eleventh Circuit is the only circuit to extend *Lane* beyond the right of access to the courts, holding that Title II of the ADA, as applied to access to public education, constitutes a valid exercise of Congress' enforcement power under Section 5 of the Fourteenth Amendment. *Ass'n for Disabled Ams*., 405 F.3d at 958.  The Eleventh Circuit conceded that "the constitutional right to equality in education" is not a fundamental right.  *Id.* at 958.  Nevertheless, as in *Lane*, the Eleventh Circuit concluded the "unequal treatment of disabled persons in the administration of" education has a "long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination." *Id.*  Since "discrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship," the court held the relief available under Title II of the ADA was congruent and proportional to the injury and the means adopted to remedy the injury. *Id.* at 959.

In sum, the post-*Lane* case law (with one exception) cautions against abrogating a state's sovereign immunity as to Title II under the proportionality/congruence test, unless a plaintiff is asserting a fundamental right.  Here, Buchanan is asserting that the State of Maine engaged in improper disability discrimination.  Although such discrimination could be unconstitutional under the Equal Protection Clause, it is subject only to "rational basis" review, not the "heightened standard" of fundamental rights under the Due Process Clause. *See Lane,* 541 U.S. at 523; *Garrett*, 531 U.S. at 365-368; *Cleburne,* 473 U.S. at 446.  Absent a fundamental right, based on the law as it has been developed to date, Title II is not a proportional or congruent response to the recognized history of disability discrimination for mental health services.

10

This Court must conclude Title II of the ADA, as applied to access to public mental health services, does not validly abrogate the State's sovereign immunity and cannot be enforced against the State of Maine in a lawsuit for monetary damages.

**B.     Consent Decree**

The Act may still apply to the State. The second exception to Eleventh Amendment immunity is when a state has consented to be sued. *Seminole,* 517 U.S. at 54. On this exception, there is an unresolved issue: the consent decree. According to the original Complaint, a class action was brought in 1989 in Maine Superior Court on behalf of AMHI patients, including Mr. Buchanan, and in 1990, the Superior Court entered a consent decree. *Complaint* at ¶ 2-3, 4, 19. Under the consent decree, the State was required to provide Mr. Buchanan and the other class members with certain mental health services, including development of an individualized service plan ("ISP"), community support services, and adequate mental health care and treatment. *Id.* at ¶ 5. The consent decree also required the State to provide Mr. Buchanan and the other class members with a community support worker and "24-hour per day, 7-day per week crisis intervention services." *Id.* at ¶ 6. On May 23, 2003, a state court "found the State not in substantial compliance with the provisions of the consent decree." *Id.* at ¶ 4. A subsequent contempt order was issued in September 2003. *Id.* at ¶ 20. The Complaint alleges a nexus between the State's alleged failure to comply with the consent decree, through its failure to provide essential services to Mr. Buchanan, and Mr. Buchanan's death. *Id.* at ¶¶ 51-54.

The Plaintiff's allegations compel the questions: what did the State of Maine consent to? Does the consent decree provide a sufficient basis to establish a waiver of immunity? The issue was not briefed and there is no further information about the terms of the consent decree. Nevertheless, the Plaintiff has alleged that the State consented to certain legal obligations under a

consent decree, that it failed to comply with those obligations, that its failure to do so contributed to Mr. Buchanan's death, that the State has been sued successfully in state court, and that the state court retains jurisdiction over the class action with the issuance of two contempt orders in 2003.  It is a close question, whether in the context of a motion to dismiss, these allegations are sufficient to survive Defendants' challenge; however, this Court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004)(quoting *Hirshon v. King & Spaulding,* 467 U.S. 69, 73 (1984)).   Applying this stringent standard, this Court concludes the Defendants are not entitled to dismissal at this stage.

### C.   Motion for Leave to Amended Complaint

In his Motion for Leave to File Third Amended Complaint, Buchanan asserts the Third Amended Complaint corrects errors and reforms the Complaint to allege the causes of action permitted by the Recommended Decision of the Magistrate Judge as revised by the Court in its Order of March 3, 2005.  The County has not objected, and the State has not objected except in its Motion for Reconsideration as to Title II (Count VII).  This Court grants the Motion.

## VI.   CONCLUSION

The Defendants' Motion for Reconsideration is DENIED, and the Plaintiffs' Motion for Leave to File Third Amended Complaint is GRANTED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2005

12